IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| LESLIE D. MOWER,<br><br>              Petitioner,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>              Respondent. | ORDER AND<br><br>MEMORANDUM DECISION<br><br>DENYING § 2255 MOTION IN PART<br><br>AND REQUIRING U.S. ANSWER<br><br>TO REMAINDER<br><br><br>Criminal Case No. 2:02-CR-787-DAK<br><br>Civil Case No. 2:08-CV-5-TC |

       This matter comes before the court on federal prisoner Leslie D. Mower's Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255. A jury convicted Ms. Mower of six counts of tax evasion and one county of conspiracy to defraud the United States. She seeks a court order either vacating her 27-month sentence and granting her a new trial, or, at a minimum, releasing her to home detention or community confinement for the remainder of her term of imprisonment. As grounds for her requested relief, she claims that she received ineffective assistance of counsel at trial and at the sentencing hearing.

       For the reasons set forth below, the court finds that Ms. Mower's Motion to Vacate, along with the files and records of the case, conclusively show that she is not entitled to relief on her claim of ineffective assistance of counsel at the sentencing hearing. Accordingly, the court dismisses that portion of her Motion.

       For the remainder of her claims, the court requires a response from the United States

Attorney before making a decision on the claims of ineffective assistance of trial counsel.

<b><u>MS. MOWER'S CLAIMS</u></b>

**1.      <u>Claim of Ineffective Assistance of Counsel During Sentencing Phase</u>**

    **a.      <u>Standard</u>**

Ms. Mower claims that she received ineffective assistance of counsel during the sentencing phase. To succeed on her claim, Ms. Mower must demonstrate two things under the governing law set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).[1]

First, Ms. Mower must show that her former attorney's performance relating to her sentencing was deficient. <u>Id.</u> at 687. An attorney's performance is "deficient" if "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u>

Second, she must show that she suffered prejudice as a result. <u>Id.</u> To establish prejudice, Ms. Mower must show that but for her attorney's alleged errors, the outcome of the sentencing proceeding would have been different. That is, she has the burden to show "that [counsel errors] actually had an adverse effect on [the sentencing]. [But it] is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id.</u> at 693. Instead, Ms. Mower "must show that there is a <u>reasonable probability that, but for counsel's unprofessional errors</u>, the result of the proceeding would have been different. A reasonable probability is a <u>probability sufficient to undermine confidence in the outcome</u>." <u>Id.</u> at 694

---

[1]Although <u>Strickland</u> dealt with a death penalty case, the court finds that its standards should apply to ineffective assistance of counsel claims in the non-capital sentencing context. See <u>Glover v. United States</u>, 531 U.S. 198, 203-04 (2001) (analyzing claim of ineffective assistance of counsel in non-capital sentencing context by applying <u>Strickland</u>).

(emphasis added).

### b.      Ms. Mower's Claim of Ineffective Assistance

Ms. Mower contends that her attorney did not present enough evidence to convince the sentencing court to grant Ms. Mower's request for a downward departure (which her counsel had posed to the sentencing court as a possibility in light of various factors, including Ms. Mower's family responsibilities).  Specifically, Ms. Mower asserts that her attorney failed to investigate the severity of her autistic son's disability and failed to provide the sentencing court with adequate information (namely in the form of an expert psychological evaluation) concerning her son's emotional dependence on her.  Essentially she argues that an expert opinion, such as the one she attached to her § 2255 Motion, likely would have convinced the sentencing court that her past care of her son and her strong emotional bond with him makes her uniquely qualified to protect him from regressing into a dysfunctional state requiring in-patient mental health care.  Accordingly, she continues, if the sentencing court had had benefit of an expert opinion, there would have been a reasonable probability that it would have departed from the sentencing range of 27-33 months of incarceration and granted her request for probation.

### c.      Counsel's Performance During Sentencing Phase

Ms. Mower does not (indeed cannot) claim that her attorney failed to raise her family circumstances at sentencing.  Her attorney first raised the issue in the "Memorandum of Defendant Leslie D. Mower in Aid of Sentencing."  (Dkt # 275 [hereinafter "Sentencing Mem."] in 2:02-CR-787-DAK.)  That sentencing memorandum reads in relevant part as follows:

> **IV. [Leslie] Dee Mower is the Source of Stability of Her Disabled Son**
>
>    Dee's biggest family responsibility continues to be her youngest

> child, J.J., who is mentally disabled and still lives with her. Even though he is now 30 years old, he requires close supervision, and struggles with simple tasks. Despite his age and physical stature, he is not an adult either mentally or emotionally. <u>Dee, his mother, has always taken care of him and is the source of stability in his life.</u> <u>There is no substitute</u> for her consistent involvement and calming influence. <u>If Dee is absent for more than a few days, J.J. becomes depressed and starts to regress, by not showing up for "work" at [his mother's business], or by refusing to leave his bedroom or to attend to his personal hygiene.</u> Because of this dependency, Dee takes J.J. traveling with her about half of the time, on her longer trips. She simply is unable to leave him for longer than a week without her absence seriously and negatively impacting his ability to remain functional. In sentencing Dee Mower, we urge the Court to consider the critical role she plays in the well-being of her disabled son.

(Sentencing Mem. at 11-12 (emphasis added).) Ms. Mower's attorney also provided the sentencing court with a letter from LaDonna Davis, a friend of the Mower family for sixteen years. That letter provided the court with information concerning the dependent relationship between Ms. Mower and her son. (<u>See</u> Transcript of Sept. 13, 2006 Sentencing of Leslie Mower [hereinafter "Tr."] (Dkt # 327 in 2:02-CR-787-DAK) at 5.)

     Then her attorney raised and argued the issue during the sentencing hearing. (<u>See</u> Tr. at 3-5, 17-18, 22-23.) In fact, she began her argument by discussing Ms. Mower's "very unique family responsibilities," noting that while such a factor is not usually relevant, Ms. Mower's situation was "so atypical" that counsel wanted to emphasize that factor to the sentencing court. (<u>Id.</u> at 4.) Pointing out the emotional dependency that had developed "over a lifetime where [Ms. Mower] was the person that [J.J.] looked to and who made sure that he was okay," Ms. Mower's counsel told the court that Ms. Mower's son "starts to regress and not be able to function if [Ms. Mower] is absent." (<u>Id.</u>) She further said, "This is not something that we're speculating about. This is something that we know for a fact. . . . And what happens when she is gone is that he

starts not coming out of his room, he doesn't show up for work, he refuses to take care of sort of basic hygiene . . . ." (Id.)  The attorney argued for a departure because, she contended, sending Ms. Mower away from her son would "have a very detrimental impact on another family member [i.e., J.J.]." (Id. at 5.)

When the sentencing judge heard from the government on this issue, he stated, "What about [Ms. Mower's son J.J.]?  I mean you apparently have someone who is unusually dependent on her." (Tr. at 11.)  After the government made comments in response to Ms. Mower's attorney's argument concerning J.J., Ms. Mower's attorney responded to all the issues raised by the government.  Then she reiterated, "I want to make it clear, we're not talking about the fact that somebody else could launder for him and somebody else could pay the bills and help him.  What we're really talking about is here is an individual that has enough deficits and through the years has relied exclusively on his mother.  He does not have that relationship with anyone else . . . .  There really isn't anybody else that could step in [Ms. Mower's] role." (Id. at 17-18.)

### d.   Outcome of Sentencing Hearing

At the close of the parties' arguments, the sentencing judge stated,

> I am troubled by the relationship matter, but the law is so – presumptions are so much against family problems to be taken into consideration.  You know, about one case out of three has something like this, and the law has just developed steadily presumptively against it and the presumption is that somehow arrangements can be made.  So as I said a minute ago, the 3553 factors lead me still to a low end guideline sentence here without leading role applying.

(Tr. at 23.)  The court then sentenced Ms. Mower to 27 months imprisonment (the low end of the 27-33 month guideline range) followed by a 36-month period of supervised release.

    **e.    Ms. Mower Did Not Receive Ineffective Assistance of Counsel During the Sentencing Phase.**

        i.    <u>Ms. Mower's Counsel's Performance was not Deficient.</u>

An attorney's performance is "deficient" if "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Strickland</u>, 466 U.S. at 687. The court's scrutiny of counsel's performance must be highly deferential, and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" <u>Id.</u> at 689.

The error Ms. Mower's ascribes to her attorney is that the investigation into J.J.'s disability was not thorough enough and that the information given to the sentencing court did not sufficiently emphasize the uniqueness of the relationship. But the record shows that the sentencing court was aware of, and accepted as fact, J.J.'s dependency on Ms. Mower. (<u>See</u> Tr. at 11, 23.) Apparently the court, in its discretion, did not find that the circumstances were sufficient to depart from the sentencing range.

Given the advocacy demonstrated in the Sentencing Memorandum and the Transcript of the sentencing hearing, the court finds that Ms. Mower's counsel's performance did not fall below the requirements of the Sixth Amendment. That is, Ms. Mower's counsel provided "reasonably effective assistance." <u>See id.</u> at 687-88 (stating that "the proper standard for attorney performance is that of reasonably effective assistance," an objective standard).

        ii.    <u>Ms. Mower has not Demonstrated Prejudice.</u>

Even assuming counsel's performance was deficient, Ms. Mower has not demonstrated prejudice. First, she has not shown that the sentencing court's denial of a downward departure

deprived her of a substantive or procedural right to which the law entitled her.  See  Williams v. Taylor, 529 U.S. 362, 392-93 (2000) (Sixth Amendment claim does not satisfy Strickland prejudice component if counsel's ineffectiveness did not deprive defendant of "any substantive or procedural right to which the law entitled him").  Second, because the evidence omitted during the sentencing hearing would not have provided compelling new information to the sentencing court, she has not shown "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

*(a)     Substantive or Procedural Right*

Ms. Mower has not shown how the failure to present an expert opinion and the failure to more strongly emphasize J.J.'s disability, dependence, and the severity of harm he might suffer, deprived her of a substantive or procedural right to which she is entitled.  Because downward departure is not a legal right, and absent legal error in determining the sentencing range (a claim she does not make), the court sees no prejudice to Ms. Mower.

A sentence imposed within a properly calculated sentencing range (such as Ms. Mower's sentence) is presumptively reasonable.  See United States v. Herula, 464 F.3d 1132, 1137 (10th Cir. 2006).  Ms. Mower does not contend that the sentencing range was incorrectly calculated or that her counsel should have, but did not, object to the range.  Rather, she focuses on the court's denial of her request for downward departure, a decision solely within the district court's discretion.  See, e.g., United States v. Angel-Guzman, 506 F.3d 1007, 1017-18 (10th Cir. 2007) (recognizing that appellate court lacked jurisdiction to review district court's discretionary denial of downward departure when district court found that circumstances did not warrant departure).  She does not claim that her attorney's alleged deficient performance resulted in an increased

sentence that would not have been imposed but for legal error.  Given the discretionary nature of the court's decision, the court cannot conclude that lack of a downward departure constituted loss of a procedural or substantive right.

Moreover, as the sentencing court alluded to during the sentencing hearing (see Tr. at 23), the advisory Sentencing Guidelines, as well as case law, discourage downward departure based on family circumstances.  The Sentencing Guidelines provide that a defendant's "[f]amily ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted."  U.S.S.G. § 5H1.6 (2004).  In Koon v. United States, 518 U.S. 81 (1996), the United States Supreme Court noted that discouraged factors "include the defendant's family ties and responsibilities . . . .  The [U.S. Sentencing] Commission does not view discouraged factors as necessarily inappropriate bases for departure but says they should be relied upon only in exceptional cases."  518 U.S. at 95 (internal citations and quotation marks omitted).  Apparently, the sentencing court did not find extraordinary circumstances justifying an exception to the presumption against downward departure.

Furthermore, the evidence that Ms. Mower's counsel failed to provide appears unlikely to change the sentencing court's decision, as discussed below.

        (b)      "But For" Analysis

In her Motion to Vacate, Ms. Mower says, "To survive, J.J. must be cared for by his mother Leslie."  (Mot. to Vacate at 16.)  She essentially contends that the sentencing court was not fully informed of the severity of J.J.'s disability and the uniqueness of his emotional dependence on his Mother.  Apparently she believes that the extra force of an expert opinion containing more detailed information would have convinced the sentencing court that her family

circumstances placed her outside the "heartland" of cases for which departure is not normally warranted.

Ms. Mower attached a psychological evaluation report to her Motion to Vacate (presumably a report equivalent to what Ms. Mower contends her attorney should have presented to the sentencing court). That report was authored by clinical psychologist Robert F. Williams, Ph.D, who assessed J.J. both before and after Ms. Mower was incarcerated. His findings are contained in the December 11, 2007 Psychological Evaluation Report (attached as Ex. E to Mem. Supp. Mot. to Vacate) (hereinafter "Williams' Report").

Having reviewed that report, the court is not convinced that such evidence would have improved Ms. Mower's chances of obtaining a downward departure on the basis that she is "irreplaceable."

First, the psychological evaluation report simply provides a more detailed version of the same facts presented to the sentencing court. Dr. Williams' assessment of J.J. presents facts that track the prediction Ms. Mower's counsel made to the sentencing court. Ms. Mower's attorney, during the sentencing hearing, stated, "And what happens when she is gone is that he starts not coming out of his room, he doesn't show up for work, he refuses to take care of sort of basic hygiene . . . ." (Tr. at 4.) Dr. Williams' report provides that since J.J. lost his mother's care, his

> functioning has deteriorated appreciably. His self-care has declined. He has become more reclusive and spends large periods of time in his room. He has been stubbornly resistive to the efforts of other family members to engage him in social contact, and it has been increasingly difficult for them to lure him out of his room. His involvement in employment provided by the family has similarly declined.

(Williams' Report at 1; see also id. at 3 (testing suggested that J.J. "was experiencing social withdrawal").)

9

Second, even with the benefit of hindsight and information that would not have been available at the time of sentencing, the report does not fully support Ms. Mower's assertion that she is the only one who can care for J.J. For example, when describing J.J.'s past, Dr. Williams stated that J.J. "has been <u>partly</u> dependent upon the support and guidance of others, especially his mother, Leslie DeeAnn Mower." (Williams' Report at 1 (emphasis added).) Dr. Williams also noted that, after Ms. Mower was incarcerated,

> supervision of J.J. was largely assumed by his stepfather, Kenneth Dolezsar. Mr. Dolezsar had a positive and accepting personality style, and he developed a strong rapport with J.J. <u>It appears that J.J.'s functioning continued at about the same level so long as he had access to the daily encouragement and support of Mr. Dolezsar.</u>

(<u>Id.</u> (emphasis added).) This fact suggests that Ms. Mower was not irreplaceable. Sadly, Mr. Dolezsar was murdered in November 2007, and his support for J.J. vanished. (<u>Id.</u>)

Dr. Williams does opine that "it appears that presently there is no one who has the quality of relationship or the moral authority with J.J. to influence his behavior toward a more positive adjustment." (<u>Id.</u>) But in the same report, he notes that J.J. "still participates in some activities. He has season tickets for professional basketball games, and he likes to attend hockey games with the team formerly coached by his late stepfather." (<u>Id.</u> at 2.) And after Dr. Williams' face-to-face re-evaluation of J.J. following Ms. Mower's incarceration and the death of J.J.'s stepfather, he made observations that do not demonstrate the catastrophe foreshadowed by Ms. Mower's Motion to Vacate. For instance, he noted that: (1) J.J.'s "hygiene was acceptable"; (2) "J.J. denied feeling particularly anxious or depressed at the time of the interview" although he was later willing to admit to a "'mild' level of depression"; (3) J.J. reported that after his stepfather's funeral, "[h]e did not have much of an appetite 'for a while,' [but that it was] 'back

to normal'"; (4) J.J. "admitted that he was spending a lot of time in his room, 'but I did before [my stepfather] died.'"; and (5) "J.J. had no particular health concerns except for his long-term difficulty sleeping." (Id. at 3-4.)

Despite J.J.'s documented behavior, Dr. Williams could not predict how, or even whether, J.J. would continue to regress. In the report's conclusion, Dr. Williams states that "there is a clear and distinct deterioration in [J.J.'s] present level of functioning as compared to the initial interview one year ago [before Ms. Mower was incarcerated]." (Id. at 4.) But he also vaguely stated that:

> [i]t is not possible at this point to predict whether J.J.'s mood disorder will lead to further deterioration. If so, he will require outpatient mental health services and may ultimately require a court of antidepressant medication and inpatient care. . . . With the absence of his mother and stepfather, there is no one available now who has sufficient influence and moral authority to lead him to a healthier emotional adjustment.

(Id. at 5.)

Because Dr. Williams' report provides essentially the same information presented to the sentencing court, Ms. Mower has not shown "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In other words, the court's confidence in the outcome of the sentencing proceeding has not been undermined. See id.

Ms. Mower has not established prejudice. Accordingly, the court finds that Ms. Mower did not receive ineffective assistance of counsel in connection with her sentencing.

### f.     Dismissal Under 28 U.S.C. § 2255

"If it plainly appears from the motion, any attached exhibits, and the record of prior

proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party." Rule 4(b) of the Rules Governing § 2255 Proceedings. For the reasons set forth above, the court finds that Ms. Mower is not entitled to relief for her claim of ineffective assistance of counsel during the sentencing phase. Accordingly, under Rule 4(b), the court hereby DISMISSES that portion of her Motion to Vacate.

**2.      Claim of Ineffective Assistance of Counsel at Trial**

The court has reviewed Ms Mower's Motion and the materials submitted with the Motion. Based on those materials, and by authority of 28 U.S.C. § 2255 and Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts, the court hereby orders the United States Attorney to file an answer or other pleading in response to Ms. Mower's Motion within 30 days of the date of this Order.

SO ORDERED this 21st day of April, 2008.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
Chief Judge